## Transfer of Prisoners.

*Department of Justice—Opinions—To whom opinions may be given.*

1. Although the Administrative Code of June 7, 1923, P. L. 498, limits the furnishing of opinions by the Department of Justice to certain State officials, such opinions may, in certain circumstances, and where a State matter is involved, be furnished to a county official.

*Penitentiaries — County prisons — Transfer of prisoners—Cost of maintenance—Act of July 11, 1923.*

2. Under the Act of July 11, 1923, P. L. 1044, the cost of keeping prisoners transferred from a penitentiary to a county prison in a county other than the county in which they were convicted must be paid by the latter county, although the *per diem* cost in the county prison may be in excess of the *per diem* cost in the penitentiary.

Department of Justice. Opinion to Thomas D. Danner, County Solicitor of Northampton County.

CAMPBELL, 1st Dep. Att'y-Gen., July 31, 1924.—This department is in receipt of your letter of the 22nd instant, in which you state that certain prisoners were duly transferred from the Eastern State Penitentiary to the Northampton County Prison under the provisions of the Act of July 11, 1923, P. L. 1044; that said prisoners have been kept and maintained in the Northampton County Prison at the expense of the County of Northampton; that statements

of the cost to the County of Northampton of the keeping of said prisoners have been presented for payment to the various counties from which these prisoners were originally sentenced; and that the county commissioners in certain cases have refused to make payment, alleging that the *per diem* cost in the Northampton prison is greater than the *per diem* cost of maintaining prisoners in the Eastern Penitentiary, and that their liability, under the Act of 1923, for the keeping of such transferred prisoners was limited to the *per diem* cost of keeping prisoners in the Eastern Penitentiary.

Because the collection of the money which you contend is owing to the County of Northampton will involve the bringing of actions for the collection thereof in a number of different counties, and because this question is involved in the matter of the maintenance of prisoners in a number of other counties, who were transferred thereto under the provisions of the said Act of 1923, you request that an opinion may be rendered by this department on the following question:

In the case of a prisoner transferred from the Eastern State Penitentiary to a county prison by virtue of the provisions of the Act of July 11, 1923, P. L. 1044, is the liability of the county in which such prisoner was convicted to the county to which he was so transferred for his keeping limited by the *per diem* cost of keeping prisoners in said penitentiary during said period of time?

Although the power and duty of this department in the matter of furnishing legal advice is limited to the furnishing of the same "to the Governor and to all administrative departments, boards, commissions and officers of the State government concerning any matter or thing arising in connection with the exercise of the official powers or the performance of the official duties of the Governor or such administrative departments, boards, commissions or officers" (article IX, section 902, Administrative Code), and although it is the policy to avoid formal opinions in cases in which a disputed matter has been submitted to the courts, or is about to be submitted, for decision, we shall in this case render our opinion upon the question you raise for the reasons you have given, and also for the reason that these prisoners are in a large sense wards of the State.

Section 9 of the Act of April 23, 1829, P. L. 341, provides that the expense of the keeping of convicts in the Eastern and the Western Penitentiaries shall be borne by the respective counties in which they shall be convicted.

The Act of July 11, 1923, P. L. 1044, authorizes the transfer of prisoners from certain penal institutions, including the Eastern State Penitentiary, to certain other penal institutions, including the Northampton County Prison, and provides the procedure therefor, including, in section 2, a provision for notice of any such proposed transfer to the county commissioners of the county from which the prisoner was committed; and, in section 5, a provision for notice to said county commissioners of the completion of such transfer.

Section 3 requires those in authority over the institutions to which such transfer shall be made to accept and receive such prisoners and thereafter in safe custody to keep and provide for them until the expiration of their terms of imprisonment.

Section 4 provides as follows: "The expense of transferring, retransferring and keeping such prisoners so transferred or retransferred shall continue to be borne by the county in which such prisoner was convicted, and the same shall be paid to the authorities having charge of the transferred or retransferred prisoner by the said county from time to time as bills are rendered."

### Transfer of Prisoners.

For a hundred years the State has undertaken in its sovereign capacity to provide facilities for the incarceration of those criminals convicted of the more serious crimes against society. It has provided the necessary penal institutions, the necessary cost of administration thereof, and the proper food and clothing for the inmates. During all that time it has assessed the cost of keeping such prisoners upon the counties in which they there were convicted.

During recent years the State penal institutions became overcrowded, resulting in sanitary and disciplinary evils. A survey showed that there were many penal institutions owned and operated by various counties in which there were adequate facilities for the care of additional prisoners. For these reasons, the aforesaid Act of 1923 was passed and approved, and under its authority many transfers were made.

It would have been manifestly unfair to place either the whole or any part of the cost of keeping such transferred prisoners upon the county to which they happened to be transferred. Any such plan would have penalized the county which had been farsighted enough to build a large prison, or the county which, because of its adequate police protection or the high character of its citizenship, had fewer prisoners in its own prison than could be accommodated. Or, I might add, that it would have penalized those counties which, having the facilities for caring for additional prisoners, showed enough interest in the welfare of the inmates of the penitentiaries to willingly accept additional prisoners, which attitude was conspicuously absent on the part of many county commissioners at the hearings held in Philadelphia in September, 1923, at which time these transfers were made.

It appears to me that the provisions of this Act of 1923 with reference to the assessment of the cost of keeping transferred prisoners upon the counties from which they came could not have been made clearer.

The act does not specifically limit these expenses to the amount that it would have cost had such transferred prisoners been maintained in the penitentiary. If any such provision had been in the mind of the legislature, it would have seen the unfairness of placing any additional cost upon the county to which prisoners had been transferred, and would have likely placed that additional cost upon the State. It did not do so.

If, under the act, the county from which such a prisoner was sentenced was to be assessed upon the *per diem* cost of keeping prisoners in the penitentiary, the rule would apply equally to cases in which the cost of maintenance in the local county prison is less than the cost in the penitentiary, as well as to cases in which the former is greater than the latter. If such be the case, to whom would such surplus be payable?

The fact that the average cost of keeping fifty or a hundred prisoners is greater than the average cost of keeping two thousand, furnishes no argument for the interpretation contended for by these debtor counties. The legislature is presumed to have considered that such would likely be the case, and, if it had intended to limit this cost to such counties, would have inserted such a limitation.

I am clearly of the opinion that the provisions of section 4 of said Act of 1923 require the payment of the proper cost of keeping such transferred prisoners to the county within which they are maintained by the county in which they are convicted.

From C. P. Addams, Harrisburg, Pa.